By decree dated March 27th, 1945, reference was made to the special master to ascertain and report the moneys presently due and payable to Fidelity Union Trust Company, as trustee, from Union Cemetery Association and Hollywood Memorial Park, Inc., under a final decree dated July 3d 1929, the amended decree dated August 3d 1929, and the decree of March 27th, 1945.
The Fidelity Union Trust Company, as trustee, and certain bondholders, and Union Cemetery Association, except to the report of the special master.
The exceptions by the Fidelity Union Trust Company, trustee, and those of the bondholders are:
1. That the special master failed to find Union Cemetery Association and Hollywood Memorial Park, Inc., jointly and severally liable in the sum of $662,666.49 to the Fidelity Union Trust Company, as trustee. While the special master does not specifically report joint and several liability, such joint and several liability is, I think, inherent in the report. Whether that is so or not, the decrees of this court determine that both Hollywood Memorial Park, Inc., and Union Cemetery Association violated the statute relating to cemetery associations, and also the decrees of the court, as a result of which they became tort-feasors with respect to the trust res, and each is liable for the whole loss sustained or the whole amount due, and the decrees having been obtained against them jointly may be enforced against either of them.
"* * * The rule is firmly settled that where a breach of trust has affected two or more or all of co-trustees with a common liability, they are liable jointly and severally; each is liable for the whole loss sustained or the whole amount due, and a decree obtained against them jointly may be enforced against any one of them. * * *" Pom. Eq. Jur. (5th ed.) § 1081.
In Proprietors of Eastern New Jersey v. Force's Executors,72 N.J. Eq. 56 (at p. 128), Vice-Chancellor Pitney held: *Page 52 
"* * * That a liability to make good a loss resulting from a breach of trust participated in by more than one trustee is both joint and several, so that each guilty trustee is liable for the whole of the loss. And it is difficult to perceive how there could be any other rule, since the liability of two or more persons, which is joint and not several, can arise only out of a joint contract, and a breach of trust is not a breach of contract, but in the nature of a tort. * * *"
Moreover, the joint liability of these corporations not only appears from the manner in which they operated the respective sections of the cemeteries and the manner in which they diverted the proceeds contrary to the decrees of this court, but also by the law of this case, the court having determined that the lands themselves constituted a trust res with the proceeds of the sale from such lands appropriated to statutory and decretal purposes. And again their joint and several liability might also be rested upon the finding by this court that Hollywood Memorial Park, Inc., was merely a selling agent of Union Cemetery Association, and applying the law of principal and agent the act of the agent becomes the act of the principal with both liable for misfeasance, making them jointly and severally liable to the trustee whom they wronged by their unlawful appropriations of portions of the proceeds of sale contrary to the statute and the decrees of this court.
2. The trustee excepts to the failure on the part of the special master to report the amount presently due to the Fidelity Union Trust Company, as trustee, under the final decree dated July 3d 1929.
The moneys payable to bondholders who did not consent to the amended decree of August 3d 1929, is different from the amount payable to those bondholders who consented to such decree. The bondholders whose rights are governed by the final decree of July 3d 1929, are not entitled to interest on the principal moneys due them unless and until the Union Cemetery Association sells lands and fails to turn over at least fifty per cent. of the proceeds when interest is calculable then only on the moneys wrongfully detained. The special master should have made a finding with respect to the bondholders *Page 53 
whose rights are governed by the decree of July 3d 1929, and unless the parties to this suit can agree upon the amount, re-reference to the special master will be made to ascertain the same.
Exceptions 3 and 4 relate to clerical errors. Exception 3 calls attention to the fact that the special master reported thatExhibit "B" attached to his report and which was received in evidence and marked "C2" further shows the amount which under the terms of the contract of June 1st, 1938, should have been paid to Union Cemetery Association but which was not so paid. This is an error. In fact said Exhibit "B" shows the amount which under the decrees should have been paid to Union Cemetery Association and which was not so paid.
Exception 4 complains that the special master erroneously limited the amount to be paid to the trustee to one-half of the proceeds of the sale of lots, whereas he should have found the amount to be paid to be at least one-half of the proceeds of the sale of lots. It is apparent that the special master found as a matter of fact that there was due the trustee at least one-half of the proceeds of the sale of lots and that the omission of the words "at least" was an error.
The exceptions by Union Cemetery Association to the special master's report are twelve in number and generally complain that the findings by the special master "are wholly outside the order of reference, and outside the issues raised, litigated, and decided in these proceedings." The order of reference provides that the special master "ascertain and report the moneys presently due and payable to Fidelity Union Trust Company, as Trustee, from Union Cemetery Association and Hollywood Memorial Park, Inc., under the final decree dated July 3d 1929, the amended decree dated August 3d 1929, and the within decree * * *."
The decree of March 27th, 1945, in which the reference to the special master is made, specifically retains to the bondholders who availed themselves of the amended decree of August 3d 1929, by surrendering their bonds and accepting certificates of indebtedness, and Fidelity Union Trust Company, as trustee for such bondholders, all the rights and remedies accorded to them or any of them by said amended decree, *Page 54 
and expressly reserves and preserves to them such rights. As to the bondholders who have not availed themselves of the amended decree of August 3d 1929, by surrendering their bonds and accepting certificates of indebtedness, and the Fidelity Union Trust Company, as trustee, for such bondholders, their rights and remedies accorded to them by the decree of July 3d 1929, are retained and expressly reserved and preserved for them.
The exceptions are as follows:
"1. For that the Master erred in finding and reporting that under the opinions and decrees in this case, it has already been determined that this defendant in remitting funds to the Complainant, illegally withheld a portion (one-half) of the perpetual care fund and selling commissions, and that the amount so wrongfully retained by this defendant is $4,162.45, and that this defendant is primarily liable for said sum and that said sum is now due and payable to said Complainant; — because said findings are outside the order of reference and outside the issues raised, litigated and decided in these proceedings.
"2. For that the Master erred in charging this defendant with interest (6%) on the aforesaid sum of $4,162.45, and in finding that such interest amounted to $685.83, and that this defendant is primarily liable for said interest and is now due and payable to Complainant; — because the order of reference did not authorize or direct or require the said Master to make such finding or charge this defendant with any portions of interest or compute or report on the amount of interest.
"3. For that the Master erred in finding that Exhibit "B"
prepared by Morris M. Beiner and received in evidence and markedExhibit C-2 shows the amount, which under the terms of the contract of June 1st, 1938, between Hollywood Memorial Park, Inc., and this defendant, should have been paid to this defendant, but which was not so paid; — because in fact no such showing appears in said exhibit. (This refers to the error under exception 3 of the Fidelity Union Trust Company herein before mentioned.)
"4. For that the Master erred in finding that Complainant *Page 55 
was entitled to receive from this defendant one-half of the proceeds from the sale of lots and plots on both the East and West sides of the Cemetery, less any cash discounts given on the sale of said lots and plots; — because said finding is outside the order of reference and outside the issue raised, litigated and decided in these proceedings, and contrary to the law of the case and the decree in this cause dated March 27th, 1945.
"5. For that the Master erred in finding that Complainant was entitled to all the moneys which this defendant received from Hollywood Memorial Park, Inc.; and that it had no right to withhold and retain 50% thereof, or any other portion thereof, and that this defendant cannot successfully contend otherwise; and that this defendant had no right to withhold, but did wrongfully withhold and retain $43,133.01 out of the moneys paid to it by said Hollywood Memorial Park, Inc., and that this defendant is primarily liable and accountable to Complainant for said sum, and is chargeable with and indebted to Complainant for interest on said sum at the rate of 6%, amounting to $5,210.60; and that said sums of $43,133.01 and $5,210.60 are now due and payable to complainant; — because said findings are contrary to the law of the case and the decree in this cause, dated March 27th, 1945, and outside the order of reference, and the issues raised, litigated and decided in these proceedings, and in any event contrary to the terms of the contract between this defendant and Hollywood Memorial Park, Inc., dated June 1st, 1938.
"6. For that the Master erred in finding that Hollywood Memorial Park, Inc., was obligated to pay to this defendant, and this defendant was obligated to collect and should have collected from Hollywood Memorial Park, Inc., and remitted to the Complainant, 50% of the moneys which said Hollywood Memorial Park, Inc., realized from the gross sales of lots and plots in the West Side (less cash discounts) and that such 50% amounts to $677,166.32; and that out of said $677,166.32, this defendant failed to collect from Hollywood Memorial Park, Inc., the sum of $568,872.56 and that this defendant is secondarily liable (Hollywood Memorial Park, Inc., being held primarily liable) and accountable to Complainant for said $568,872.56 as well as interest thereon, at *Page 56 
the rate of 6%, amounting to $93,793.93, and that said sums are now due and payable to Complainant; — because the order of reference did not authorize, direct or require the Master to make such findings and determinations, and such findings and determinations are contrary to the law of the case and beyond the scope of the order of reference and outside of the issues raised, litigated and decided in these proceedings, and in any event, contrary to the terms of the contract between this defendant and Hollywood Memorial Park, Inc., dated June 1st, 1938.
"7. For that the Master erred in finding that there is now due and payable to the complainant from this defendant the total sum of $715,858.38, and that of this sum this defendant is primarily liable for $53,191.89 (comprising the items $4,162.45, $685.83, $43,133.01 and $5,210.60, and excepted to in the foregoing exceptions numbered 1, 2, and 5), and secondarily liable for $662,666.49 (comprising the items $568,872.56 and $93,793.93 and excepted to in the foregoing exception numbered 6); whereas the Master should have found and reported that under the terms of the order of reference, the law of the case, and the evidence before him, this defendant has overpaid the complainant, and in any event that there is nothing now due and payable to Complainant.
"8. For that the Master erred in finding that after considering all the evidence produced before him, and the decrees already entered in this cause, and under the terms of the agreement between Hollywood Memorial Park, Inc., and this defendant, dated June 1st, 1938, the former became the selling agent for the latter for lots and plots on the West Side of the cemetery; — because the order of reference did not authorize, direct or require the Master to make such finding; and in any event such finding is not supported by the law or the evidence and is contrary to the law and the evidence.
"9. For that the Master erred in failing to find (a) that Complainant was and is at most entitled to receive from this defendant 50% of the proceeds actually collected by this defendant from sales of lots and plots on the East Side and from Hollywood Memorial Park, Inc., from sales on the West side; (b) that this defendant has actually overpaid Complainant *Page 57 
by at least $6,851.42, and there is nothing now due and payable from the defendant to Complainant because admittedly, this defendant collected the total sum of $562,132.45 (comprising the items $108,293.76 collected from Hollywood Memorial Park, Inc., and $453,838.69 from sales on the East side, after deducting cash discounts only) and already has remitted to Complainant $287,917.65, or more than 50% of the total collections, which amounts to $281,066.23.
"10. For that the Master erred in finding that as of December 31st, 1944, there is due and owing for principal and interest the sum of $752,068.48 on outstanding bonded indebtedness; — because said finding is excessive in that it is based exclusively on computations under the Amended Final Decree, dated August 3d 1929, and ignores the terms of the original Final Decree, dated July 3d 1929; and in any event, because the said finding is outside the order of reference.
"11. For that the Master erred in receiving and marking in evidence, over this defendant's objection, exhibits marked C-4,C-5, C-6, C-7 and C-8; whereas he should have rejected said exhibits because the facts therein stated are outside the order of reference and the issues raised, litigated, and decided in these proceedings, including the decree of this court, dated March 27th, 1945, and contrary to the law of the case.
"12. The various findings and determinations made by the said Master to which this defendant excepts by the foregoing exceptions, numbered 1, 2, 3, 4, 5, 6, 7, 8, and 10 are erroneous for the reasons aforestated, and for the following further reasons:
"(a) They are not sustained by the evidence;
"(b) They are contrary to the evidence;
"(c) They are contrary to the weight of the evidence;
"(d) They are contrary to law."
I find that there was evidence sufficient before the special master from which he could find the several sums of money set forth in the exceptions from one to twelve and that the special master committed no error either in the finding of fact or law with respect to the matters set forth in said exceptions.
I feel that exception number five should be separately here considered. This exception is to the finding of the special *Page 58 
master that the Fidelity Union Trust Company, trustee, was entitled to all moneys which Union Cemetery Association received from Hollywood Memorial Park, Inc., and that it had no right to withhold wrongfully $43,133.01 out of the moneys paid to it by Hollywood Memorial Park, Inc., and is chargeable with 6% interest on that sum. If Union Cemetery Association received from Hollywood Memorial Park, Inc., less than 50% of the proceeds of such sales it could not, under the decrees entered in 1929, withhold any part of such moneys, for the trustee was entitled to at least 50% of the proceeds of sales whether made by Hollywood Memorial Park, Inc., or Union Cemetery Association, and it could not lawfully interpose sales made by Hollywood Memorial Park, Inc., as a ground for not turning over to the trustee at least 50% of the proceeds of sales which the decrees entered in 1929 charged with a lien in favor of the trustee to the extent of 50% of such proceeds.
Treating generally with these exceptions it seems clear to me that their purpose is to re-litigate the issues settled by the decree of this court on the merits of the case which decree has since been affirmed by the Court of Errors and Appeals (FidelityUnion Trust Co. v. Union Cemetery Association, 136 N.J. Eq. 15;40 Atl. Rep. 2d 205; affirmed, 137 N.J. Eq. 455;45 Atl. Rep. 2d 670 and 698), and for that reason are lacking in merit. It would be intolerable to permit a suitor endlessly to litigate and re-litigate his alleged grievance. At some point in the controversy he must accept the award of the court as final and conclusive, and that point is reached when a court of competent jurisdiction has heard and considered all that has been or could have been said by way of evidence and argument on the issues raised in the pleadings, and handed down its decision.Putnam v. Clark, 34 N.J. Eq. 532; Mendel v. Berwyn Estates,109 N.J. Eq. 11; 156 Atl. Rep. 324; Lane v. Rushmore, 123 N.J. Eq. 531; 198 Atl. Rep. 872; affirmed, 125 N.J. Eq. 310;4 Atl. Rep. 2d 55.
It is well settled that a master's report is not to be disturbed unless it is found by the court that the master erred in matter of law or, plainly, as to the facts. I have considered *Page 59 
the testimony before the master and I find that his findings of fact are in every instance sustained by the evidence before him and that he committed no error in law. Wilson v. Sandall,92 N.J. Eq. 130; 111 Atl. Rep. 322; affirmed, 92 N.J. Eq. 463;113 Atl. Rep. 927; In re Herrmann, 127 N.J. Eq. 65; 12 Atl. Rep.
2d 145; affirmed, 127 N.J. Eq. 84; 11 Atl. Rep. 2d79.
The exceptions are overruled.
I have been informed by Mr. Emanuel P. Scheck of Osborne, Cornish Scheck, the solicitors for Hollywood Memorial Park, Inc., that the exceptions filed by them in this cause are withdrawn.