277 N.J. Super. 360 (1994)
649 A.2d 904
REGINALD REAVES, SR., PLAINTIFF,
v.
EGG HARBOR TOWNSHIP, VINCENT MURPHY AND MARIE MURPHY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Atlantic County.
Decided June 21, 1994.
Revised July 8, 1994.
*361 Reginald R. Reaves, Sr., pro se for plaintiff.
*362 Joseph Gindhart for defendant Egg Harbor Township (Gindhart & Learn, attorneys).
Dennis Gonski for defendants Vincent and Marie Murphy.

OPINION
GIBSON, J.S.C.
The plaintiff, Reginald Reaves (Reaves), instituted this action in August 1992 to vacate a 1977 tax foreclosure judgment against property formerly owned by his parents David and Winnie Reaves and located in Egg Harbor Township. The gravamen of Reaves' complaint is that his parents did not receive adequate notice of the 1977 foreclosure action. The defendants, Vincent and Marie Murphy, are the present owners of the property and now move for summary judgment pursuant to R. 4:46-1.

Findings of Fact
The material facts are undisputed and relatively simple. In 1963, David and Winnie Reaves, plaintiff's parents, purchased the subject property from the Atlantic City Development Corp. As a result of a subsequent tax foreclosure judgment in May 1977, title passed to I. Cyzner, D. Jaffe, N. Jaffe and S. Juffe. Apparently, plaintiff's parents, as well the other defendants in the foreclosure action, failed to redeem the tax sale certificate. In June 1977, Cyzner, the Jaffes and Juffe conveyed the property to the Murphys for $2,300. The Murphys' title was recorded on June 25, 1977. From 1977 to the present, the Murphys have paid all property taxes and exercised their full ownership rights.

Findings of Law
Although Reaves has labeled this a quiet title action, he has failed to demonstrate compliance with a basic jurisdictional prerequisite for such a claim; that is, neither he nor his parents have been in peaceable possession of the property since 1977. See N.J.S.A. 2A:62-1. Since the 1977 judgment foreclosed any colorable interest Reaves or his parents had in the property, the *363 present cause of action cannot succeed unless there is some basis for vacating the prior judgment. See R. 4:50-1. In addition, any application to vacate under R. 4:50-1 must be viewed in a context wherein a disposition has already occurred; that is, where the matter has already been litigated. See Friedman v. Monaco & Brown Corp., 258 N.J. Super. 539, 543, 610 A.2d 885 (App.Div. 1992).
Since Reaves has not sought to reopen the earlier judgment, the present complaint constitutes a "collateral attack;" that is, it questions the validity and integrity of a separate and earlier adjudication of this court. Collateral attacks are usually not permitted based on notions of repose. See United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93 (1878); see also 46 Am.Jur.2d, Judgments § 622 (1969). The rationale for the rule is that, in general, even "bad" results are better left undisturbed, rather than suffer the unpredictability of events that results from permitting endless judicial attacks. Throckmorton, supra, 98 U.S. at 68-70, 25 L.Ed. at 96; see also Fidelity Union Trust Co. v. Union Cemetery Assoc., 138 N.J. Eq. 50, 58, 46 A.2d 728 (Ch. 1946), aff'd, 139 N.J. Eq. 309, 50 A.2d 875 (E. & A. 1946). Although there are exceptions to that general rule, none are evident here. For example, plaintiff has not claimed that there has been a fraud on the court, as was the case in Giehrach v. Rupp, 112 N.J. Eq. 296, 301, 164 A. 465 (E. & A. 1932), or that the former judgment was "void" because the court never had jurisdiction over the parties or subject matter. See James v. Francesco, 61 N.J. 480, 295 A.2d 633 (1972). Nor has there been any allegation of fraud directed to third parties. See Catabene v. Wallner, 16 N.J. Super. 597, 601, 85 A.2d 300 (App.Div. 1951). In sum, Reaves submits no valid exception to the collateral attack rule.
Whether this action is viewed as an effort to vacate the 1977 judgment or a collateral attack in the guise of a quiet title action, plaintiff bears a substantial burden. Reaves must prove why this court should disturb a judgment that has long since *364 extinguished his and his parents' rights to the subject premises. That burden has not been met.
In contrast, the Murphys' summary judgment motion is meritorious for several reasons. To begin with, the Murphys correctly argue that the present complaint is too late, coming as it does some fifteen years after entry of judgment. Stated differently, plaintiff failed to vacate the judgment within a reasonable time. See, e.g., Friedman, supra, 258 N.J. Super. at 543-45, 610 A.2d 885; R. 4:50-2. In determining what constitutes a reasonable time, this court must evaluate the surrounding circumstances and give due consideration to the rights and interests that have arisen since entry of judgment. See, e.g., City of Newark v. Block 1854, 244 N.J. Super. 402, 582 A.2d 1006 (App.Div. 1990).
In that regard, the undisputed evidence indicates that the Murphys have continuously owned and maintained the subject property for nearly seventeen years. It follows that they have acquired considerable property rights during that time. Moreover, Reaves has failed to adequately explain why he and his parents delayed in bringing this action. He merely claims that an "inadequate chain of title" arose that somehow prevented him and/or his parents from tracking the transfer of this property. This excuse, as well as Reave's claim that the tax foreclosure purchasers incorrectly described the property in the deed conveying title, is simply unpersuasive. The fact is that the deeds transferring title to the foreclosure purchasers and the Murphys clearly and accurately refer to the subject property. Nor can I understand how a purported defective chain of title accounts for a fifteen year delay in seeking to vacate the foreclosure judgment.
Reaves also suggests that a genuine issue of material fact exists regarding the service of process on his parents, thereby precluding the entry of summary judgment. Specifically, he contends that no documents exist to prove effective service or notice of the delinquent tax sale. Although proper service is always a concern when a matter is uncontested, in a tax foreclosure the court's attention routinely focuses on the effectiveness of service and the *365 diligence of the inquiry regarding those persons who have a potential interest in the property. More importantly, in this case, there is nothing in the record from which this court would have reason to assume anything other than proper service. To revisit that issue some fifteen years after the fact with no more than the bare suggestion that no documents exist to prove service is simply inadequate and improperly attempts to shift the burden to the wrong party. Certainly this bare suggestion falls well short of satisfying the substantial burden that plaintiff has in seeking to vacate this judgment. Although Reaves says he "hopes" to retrieve additional information from the Egg Harbor Township tax records, he can offer nothing more than the possibility that his parents paid their taxes on the property. Hopes and possibilities are simply inadequate to sustain the heavy burden plaintiff has in this setting.
A fifteen year unexcused delay would alone bar plaintiff's claim to this property. As is frequently noted: "[E]quity aids the vigilant, not those who sleep on their rights." See Stout v. Seabrook's Executors, 30 N.J. Eq. 187, 190-91 (Ch. 1878), aff'd o.b., 32 N.J. Eq. 826 (E. & A. 1880); see also Norfolk & New Brunswick Hosiery Co. v. Arnold, 49 N.J. Eq. 390, 397-98, 23 A. 514 (Ch. 1892). Moreover, the fact that plaintiff's delay has permitted the creation of a completely new chain of title, as well as the attendant prejudice to the new fee owners, warrants a bar to the present action based on laches. See Clark v. Judge, 84 N.J. Super. 35, 53, 200 A.2d 801 (Ch. 1964), aff'd, 44 N.J. 550, 210 A.2d 415 (1965). In sum, given Reave's inexcusable and unexplained delay in bringing this matter to the court's attention, given the Murphys' subsequent property interests engendered by such delay and finally, given the meager substantive challenges to this valid foreclosure judgment, plaintiff's claim against the Murphys should be barred as a matter of law.
As an additional basis for granting this motion, the Murphys argue that they are bona fide purchasers for value and *366 therefore hold title free and clear of plaintiff's claims. Their bona fide purchaser status is presumed unless proven otherwise:
[W]here it is made to appear that one has acquired title to property and has paid a valuable consideration therefor, the purchaser is presumed to be a bona fide purchaser for value without notice until the contrary appears, and the burden of showing the contrary rests upon the party alleging that title was acquired by the purchaser with notice of an outstanding equity or claim.
[See Venetsky v. West Essex Bldg. Supply Co., 28 N.J. Super. 178, 187, 100 A.2d 291 (App.Div. 1953).]
Thus, Reaves has the additional burden of showing that the Murphys purchased the property with notice of his parents "outstanding equity or claim." Reave's only response is to argue that the Murphys cannot be presumed to be innocent purchasers because they obtained title based on a tax foreclosure. That argument runs contrary to the clearly stated public policy of this state. The Legislature expressly favors the settlement and validation of tax titles. See N.J.S.A. 54:5-85:
[T]he provisions of this article shall be liberally construed as remedial legislation to encourage the barring of the right of redemption by actions in the superior court to the end that marketable titles may thereby be secured.
In Bron v. Weintraub, 42 N.J. 87, 91, 199 A.2d 625 (1964), the Supreme Court recognized this policy and noted that when "dealing with tax titles ... [c]ontrary to early hostility to such titles, the policy today is to support them, thereby to aid municipalities in raising revenue." See also Millburn Township v. Block 1208, 189 N.J. Super. 523, 461 A.2d 163 (Ch.Div. 1983). Accordingly, Reaves may not rest his attack on the Murphys' bona fide purchaser status by invoking the traditional hostility to tax foreclosure titles. Nor has he challenged that status in any other way.
Finally, the Murphys argue that plaintiff lacks standing; that is, he is a mere intermeddler and stranger to his parents' dispute. Generally, however, our courts have considered the threshold for standing to be fairly low. In other words, so long as a litigant evidences a sufficient stake with real adverseness, standing will be found. See Crescent Park Tenants Ass'n v. Realty Equities Corp. of N.Y., 58 N.J. 98, 107, 275 A.2d 433 (1971). Given the fact that Reaves has a stake in his parents' property as *367 their legal heir, my assumption is that he satisfies the requirement for standing. However, since his rights can rise no higher than those of his parents and, since neither he nor his parents can successfully press this stale legal claim, the standing issue is irrelevant.
In conclusion, Reaves provides no facts or proof that would warrant this court to disturb a 1977 tax foreclosure judgment. Nor has he shown that the Murphys are anything other than bona fide purchasers for value without notice of any title defect. Plaintiff's bald allegations of improper service, fifteen years after the fact and without the benefit of personal knowledge, cannot overcome the presumptions of validity that support the integrity of the 1977 judgment. When one also takes into account the Murphys' resulting ownership rights and this state's avowed public policy favoring the security of title obtained through tax foreclosure, it is clear that the Murphys' interest to the Egg Harbor property should remain preserved and plaintiff's challenge must fail.
Accordingly, summary judgment should be entered in the favor of defendants, Vincent and Marie Murphy.